UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

FILED
04 JAN 30 PM 4:04
U.S. DISTRICT COURT
N.D. OF ALABAMA

YOLANDA MCCLOUD, )
)
    Plaintiff, )
)
vs. ) Civil Action No. CV-03-S-2511-NE
)
HOMESIDE LENDING, a Division of )
Washington Mutual Bank FA, )
)
    Defendant. )

**ENTERED**
JAN 3 0 2004

## MEMORANDUM OPINION

This action is before the court on defendant's motion to dismiss counts II through V of plaintiff's complaint. Defendant argues that the state-law tort claims asserted in these counts — *i.e.*, claims for negligence, wantonness, defamation, and invasion of privacy, respectively — are preempted by the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681h(e),[1] 1681t(b)(1)(F).[2]

---

[1] 15 U.S.C. § 1681h(e) provides:

(e) Limitation of liability

    Except as provided in section 1681n and 1681o of this title, *no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency*, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report except as to false information furnished with malice or willful intent to injure such consumer.

15 U.S.C. § 1681h(e) (emphasis supplied).

[2] 15 U.S.C. § 1681t(b)(1)(F) provides:

(b) General exceptions



Defendant argues that plaintiff impermissibly alleges claims under both state and federal law as a result of defendant's furnishing credit information about plaintiff, when the FCRA provides the exclusive remedy.

## I. ANALYSIS

### A.   Standard for Dismissal under Rule 12

Defendant's motion is based upon Federal Rule of Civil Procedure 12(b)(6). To prevail, defendant must show that "no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232, 81 L. Ed. 2d 59 (1984). When ruling upon a Rule 12(b)(6) motion, the court must accept all well-pleaded facts as true, and construe them in the light most favorable to the non-moving party. *Id.*; *see also, e.g., Brooks v. Blue Cross and Blue Shield of Florida*, 116 F.3d 1364, 1369 (11th Cir. 1997); *Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983). Further, "[a] complaint may not be dismissed because the plaintiff's claims do not support

---

No requirement or prohibition may be imposed under the laws of any State –

    (1) with respect to any subject matter regulated under –

(F)     section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies, except that this paragraph shall not apply –

    (i)     with respect to section 54A(a) of chapter 93 of the Massachusetts Annotated Laws (as in effect on September 30, 1996); or

    (ii)    with respect to section 1785.25(a) of the California Civil Code (as in effect on September 30, 1996).

the legal theory he relies upon since the court must determine if the allegations provide for relief on *any* possible theory." *Brooks*, 116 F.3d at 1369 (emphasis in original) (citation omitted).

Thus, the threshold requirements for a complaint to survive a Rule 12(b)(6) motion to dismiss are "exceedingly low." *Ancata v. Prison Health Services, Inc.*, 769 F.2d 700, 703 (11th Cir. 1985). Such motions accordingly are "viewed with disfavor and rarely granted." *Brooks*, 116 F.3d at 1369 (citing *Madison v. Purdy*, 410 F.2d 99, 100 (5th Cir. 1969); *International Erectors, Inc. v. Wilhoit Steel Erectors & Rental Service*, 400 F.2d 465, 471 (5th Cir. 1968)).

**B.      The Complaint**

Plaintiff alleges the following facts which, for the purposes of addressing this motion, are deemed to be true. Plaintiff purchased real property in August 1998, borrowing money from Colonial Bank.[3] Colonial Bank sold the promissory note and mortgage executed by plaintiff to defendant on some unspecified date prior to February 2002.[4] At the time defendant acquired plaintiff's loan obligation from Colonial Bank, plaintiff was making her monthly mortgage payments by an electronic debit from her checking account.[5] Defendant began wrongfully deducting money from plaintiff's bank account for forced placed hazard insurance during April of 2002, even though plaintiff had adequate homeowner's insurance,

---

[3] *See* Complaint at ¶ 4 (doc. no. 1).
[4] *See id.* at ¶ 10.
[5] *See id.*

3

and, was not subject to an escrow withholding.[6] Plaintiff objected to this forced placed insurance in August 2002, and demanded an accounting of all monies withdrawn electronically from her account by defendant.[7] Thereafter, plaintiff tendered the correct monthly mortgage payment for December 2002, but defendant refused to accept the payment, asserting it was an "incorrect" amount because it did not include the insurance premium.[8] This pattern repeated itself.[9] At some point prior to June 2003, defendant began to falsely report that plaintiff had made late mortgage payments, or was not paying her mortgage.[10] Defendant reported this information despite being advised on more than one occasion by plaintiff and her attorneys that she was not subject to escrow withholding for hazard insurance coverage procured by defendant.[11]

Thereafter, during June of 2003, plaintiff sold her residence and attempted to purchase another house in Huntsville, Alabama.[12] When she initiated the paperwork required to "lock in" a favorable interest rate, however, plaintiff was advised that she could not qualify for a loan due to her poor credit rating, and because she was classified as a "sub-prime" borrower based on late mortgage payments inaccurately reported by defendant to various credit reporting agencies.[13] Plaintiff, through counsel, again contacted defendant, and demanded

---

[6] *See id.* at ¶¶ 8-11.
[7] *See id.* at ¶ 12.
[8] *See id.* at ¶ 14.
[9] *See id.*
[10] *See id.*
[11] *See id.* at ¶¶ 12, 13, 18.
[12] *See id.* at ¶¶ 15, 17.
[13] *See id.* at ¶ 17.

that it investigate the report of inaccurate credit information and withdraw all references to her late mortgage payments from its report to credit reporting agencies.[14] Defendant refused to correct this inaccurate information.[15]

Plaintiff alleges that defendant willfully furnished inaccurate information, and willfully failed to investigate and to correct its error.[16] Plaintiff further alleges that defendant knew, or should have known, from the correspondence received by it that she maintained her own homeowner's insurance policy, and that defendant acted wantonly when it reported her mortgage payments as being late based on her refusal to pay additionally and unnecessary insurance premiums.[17] Finally, plaintiff alleges that defendant "knew or should have known that the information concerning Plaintiff's credit that was published to various credit reporting agencies was false and inaccurate."[18]

**C.     The Relevant Provisions of the FCRA**

Defendant maintains that § 1681s-2(b) of the FCRA was enacted to be the exclusive remedy for private causes of action against those who furnish credit information. That section reads as follows:

> (b) Duties of furnishers of information upon notice of dispute
>
> > (1)   In general
> >        After receiving notice pursuant to section 1681i(a)(2) of this

---

[14] *See id.* at ¶ 18.
[15] *See id.*
[16] *See id.* at ¶ 23.
[17] *See id.* at ¶¶ 31, 32.
[18] *See id.* at ¶ 37.

5

> title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall –
>
> (A) conduct an investigation with respect to the disputed information;
>
> (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
>
> (C) report the results of the investigation to the consumer reporting agency; and
>
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis.
>
> (2)  Deadline
> A person shall complete all investigations, reviews, and reports required under paragraph (1) regarding information provided by the person to a consumer reporting agency, before the expiration of the period under section 1681i(a)(1) of this title within which the consumer reporting agency is required to complete actions required by that section regarding that information.

15 U.S.C. § 1681s-2(b).

Defendant also contends that § 1681t(b)(1)(F) makes it absolutely immune[19] from state tort claims for conduct regulated by the FCRA. That section provides:

---

[19] Although the parties refer to absolute and qualified "immunity" throughout their briefs, the court will refrain from doing so as the concept of immunity is distinct from that of preemption. "Ordinary" preemption is the issue confronting the court. *See Watkins v. Trans Union, LLC*, 118 F. Supp. 2d 1217, 1219-20 (N.D. Ala. 2000).

>(b) General exceptions
>No requirement or prohibition may be imposed *under the laws of any State* –
>
>>(1) with respect to any subject matter regulated under –
>
>. . .
>
>>(F)  section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies, except that this paragraph shall not apply –
>>
>>>(i)  with respect to section 54A(a) of chapter 93 of the Massachusetts Annotated Laws (as in effect on September 30, 1996); or
>>>
>>>(ii)  with respect to section 1785.25(a) of the California Civil Code (as in effect on September 30, 1996).

15 U.S.C. § 1681t(b)(1)(F) (emphasis supplied).

Alternatively, defendant contends it is entitled to qualified immunity pursuant to § 1681h(e), which provides:

>(e) Limitation of liability
>Except as provided in section 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report except as to false information furnished with malice or willful intent to injure such consumer.

15 U.S.C. § 1681h(e).

D.     **Preemption under §§ 1681h(e) and 1681t(b)(1)(F)**

No federal court of appeals has addressed the issue of preemption of state-law tort claims accompanying a claim under the FCRA. Several district courts which have done so, but they have taken three, distinctly different, paths. Some courts regard § 1681t(b)(1)(F) — which was added to the FCRA after § 1681h[20] — as completely subsuming § 1681h(e). *See, e.g., Hasvold v. First USA Bank*, 194 F. Supp. 2d 1228, 1239 (D. Wyo. 2002); *Jaramillo v. Experian Information Solutions, Inc.*, 155 F. Supp. 2d 356, 363 (E.D. Pa. 2001), *reconsideration granted in part*, 2001 WL 1762626. This approach is untenable, however, as it renders § 1681h(e) superfluous, and Congress left § 1681h(e) in place when it added § 1681t(b)(1)(F). *See Jeffery v. Trans Union, LLC*, 273 F. Supp. 2d 725, 727 (E.D. Va. 2003); *Stafford v. Cross Country Bank*, 262 F. Supp. 2d 776, 786 (W.D. Ky. 2003) (observing that "a statute ought . . . to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant").

Other courts have attempted to harmonize the preemption provisions by applying a temporal formula. *See, e.g., Riley v. General Motors Acceptance Corp.*, 226 F. Supp. 2d 1316, 1324 (S.D. Ala. 2002); *Vazquez-Garcia v. Trans Union De Puerto Rico*, 222 F. Supp. 2d 150, 162-63 (D.P.R. 2002); *Aklagi v. Nationscredit Financial Services Corp.*, 196 F. Supp. 2d 1186, 1194-95 (D. Kan. 2002). Under this approach, the first time period ends once the furnisher of information receives notice of the dispute. Preemption of claims during this

---

[20] *Compare* Pub. L. 91-508, 84 Stat. 1131 (1970) (current version at 15 U.S.C. § 1681h(e) (1996)) *with* 15 U.S.C. § 1681t(b)(1)(F), Pub. L. 104-208, 110 Stat. 3009-447, 3009-452 (1996).

first time period is governed by § 1681h(e) because, as the rationale goes, § 1681s-2 does not apply to the time period before the furnisher of information receives notice of the dispute. The second time period begins once the furnisher of information receives notice of the dispute, triggering the duty to investigate, which is required by § 1681s-2(b). Thus, the state law claims that arise during the second time period are preempted by § 1681t(b)(1)(F). *See Aklagi*, 196 F. Supp. 2d at 1194-96. Defendant refers to this approach as "the majority view," although an exact accounting has not been provided by either party to verify whether the cases espousing this view comprise a majority of the reported decisions. In any event, relying heavily upon *Riley v. General Motors Acceptance Corp.*, 226 F. Supp. 2d 1316 (S.D. Ala. 2002), defendant argues that state-law tort claims are always preempted by § 1681t(b)(1)(F), if the state-law claims arise out of the same nucleus of operative facts as the claim under the FCRA.

A third group of district-court decisions are based upon construction of the subject statutory provisions. *See, e.g., Jeffery v. Trans Union, LLC*, 273 F. Supp. 2d 725 (E. D. Va. 2003); *Carlson v. Trans Union, LLC*, 259 F. Supp. 2d 517 (N.D. Tex. 2003). The courts adopting this approach first look to the language of § 1681h(e), which specifically references "any action or proceeding in the nature of defamation, invasion of privacy, or negligence." 15 U.S.C. § 1681h(e). As the specified causes of action comprise a non-exclusive list of torts that might arise from false or inaccurate credit reports, § 1681h(e) is deemed by these courts as applying to any state-law causes of action that may be classified as "torts." Contrastingly,

§ 1681t(b)(1)(F) appears to deal only with state statutory regulation of credit reporting. This is evidenced by the fact that the two state statutory schemes specifically excluded from the ambit of §1681t(b)(1)(F) — *i.e.*, section 54A(a) of Chapter 98 of the Massachusetts Annotated Laws, and section 1785.25(a) of the California Civil Code — address inaccurate or incomplete information in a credit report. Thus, under the third approach, § 1681h(e) applies only to torts, while § 1681t(b)(1)(F) applies only to state statutory regulation of credit reporting practices and procedures. *See Carlson*, 259 F. Supp. 2d at 521.

Yet, another rationalization for the conclusion that § 1681t(b)(1)(F) cannot preempt all state law claims, including state common law tort claims, is that this section is a general preemption provision. In contrast, § 1681h(e) contains a more specific preemption clause (*i.e.* "any action or proceeding in the nature of defamation, invasion of privacy, or negligence"). When a specific statute carves out an exception to a general statute, the "specific statute will not be controlled or nullified by [the] general one, regardless of the priority of enactment." *Morton v. Mancari*, 417 U.S. 535, 550-51, 94 S. Ct. 2474, 2483, 41 L. Ed. 2d 290 (1974). Under the third approach, § 1681h(e) would govern the question of preemption for the claims asserted in the present case. *See Jeffery v. Trans Union, LLC*, 273 F. Supp. 2d 725 (E.D. Va. 2003); *Gordon v. Greenpoint Credit*, 266 F. Supp. 2d 1007 (S. D. Iowa 2003).

The court agrees with plaintiff that, of the three roads blazed by various district courts through the tangled statutory undergrowth, the third has

> ... perhaps the better claim
> Because it [is] grassy and want[s] wear
> Though as for that, the passing there
> Had worn them really about the same

Robert Frost, *Road Less Traveled*.

Defendant states in its reply brief that plaintiff is advocating adoption of the "minority view," and, thus, should not prevail over the current "majority view" reflected in decisions such as *Riley v. General Motors Acceptance Corp.*, 226 F. Supp. 2d 1316 (S.D. Ala. 2002), and *Aklagi v. Nationscredit Financial Services Corp.*, 196 F. Supp. 2d 1186 (D. Kan. 2002). The argument that the third approach is the minority view is not conclusive, for keeping a tally of the majority rule may be as elusive as time itself, particularly with respect to the issue at hand. Indeed, the most recent cases appear to indicate that the so-called minority rule is on the verge of gaining majority status. *See, e.g., Cisneros v. Trans Union, LLC*, ___ F. Supp. 2d ___, 2003 WL 22861675 (D. Haw. Nov. 17, 2003); *Jeffery v. Trans Union, LLC*, 273 F. Supp. 2d 725 (E.D. Va. 2003); *Gordon v. Greenpoint Credit*, 266 F. Supp. 2d 1007 (S. D. Iowa 2003); *Yutesler v. Sears Roebuck and Co.*, 263 F. Supp. 2d 1209 (D. Minn. 2003); *Carlson v. Trans Union, LLC*, 259 F. Supp. 2d 517 (N.D. Tex. 2003). Instead of being guided by raw numbers, however, the court is persuaded by the reasoning of these opinions. Neither logic nor statutory language support the temporal approach urged by defendant. *See Gordon v. Greenpoint Credit*, 266 F. Supp. 2d at 1013 (finding the time period analysis "strained at best"). Accordingly, the court finds that § 1681h(e) controls.

E.     **Stating a claim under 15 U.S.C. § 1681h(e)**

Under § 1681h(e), any action or proceeding "in the nature of defamation, invasion of privacy, or negligence" is preempted, *unless* the "false information [was] furnished with malice *or willful intent to injure* [the] consumer." 15 U.S.C. § 1681h(e) (emphasis supplied). As previously observed, plaintiff asserts state law claims for negligence, wantonness, defamation, and invasion of privacy in counts II through V, respectively. The negligence claim illustrates the paradoxical nature of § 1681h(e), which leads to a most incongruous result. While negligence is specifically mentioned as an action that will not be preempted if the false information was furnished with "malice[21] or willful intent to injure the consumer," negligence, by its very nature, can never be intentional. "Negligence is usually characterized as an inattention, thoughtlessness, or heedlessness, a lack of due care . . . . Simple negligence is the *inadvertent* omission of duty . . . ." *Coca-Cola Bottling Company United, Inc. v. Stripling*, 622 So. 2d 882, 885 (Ala. 1993) (quoting *McNeil v. Munson S.S. Lines*, 184 Ala. 420, 423, 63 So. 992 (1913) (emphasis in *McNeil*). *See generally Black's Law Dictionary* 1056-57 (7th ed. 1999). "The element of intent, or knowledge, is not present in simple negligence, and the element of intent does not raise a person's conduct to merely a greater

---

[21] Malice is not defined in the FCRA. Malice is defined in the Alabama Code as follows:

(2) Malice. The intentional doing of a wrongful act without just cause or excuse, either:

    (a)    With an intent to injure the person or property of another person or entity, or

    (b)    Under such circumstances that the law will imply an evil intent.

Ala. Code § 6-11-20 (b)(2) (1975) (2002 Replacement Vol.).

degree of negligence as, for instance, gross negligence . . . ." *Coca-Cola Bottling Company*, 622 So. 2d at 885 (quoting *Lynn Strickland Sales & Serv., Inc. v. Aero-Lane Fabricators, Inc.*, 510 So. 2d 142, 145 (Ala. 1987), *rev'd on other grounds*, *Alfa Mutual Insurance Co. v. Roush*, 723 So. 2d 1250, 1256 (Ala. 1998)). Thus, the negligence claim is due to be dismissed. *See Carlson*, 259 F. Supp. 2d at 521 n.1 (holding that "where there is a requirement of 'malice or willful intent to injure[,]' there is no cause of action for negligence").

The claim for wantonness presents a closer question. Wantonness is statutorily defined as "[c]onduct which is carried on with a reckless or conscious disregard of the rights or safety of others." Ala. Code. § 6-11-20(b)(3) (1975) (2002 Replacement Vol.). Wantonness has been defined by the Alabama Supreme Court as "the conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result." *Alfa Mutual Insurance Co. v. Roush*, 723 So. 2d at 1256 (citing *Bozeman v. Central Bank of the South*, 646 So. 2d 601 (Ala. 1994)). It is not essential, however, for a plaintiff to prove that a defendant entertained a specific design or intent to injure as an element of a wantonness claim. *Alfa Mutual Insurance*, 723 So. 2d at 1256.

Defendant therefore argues that the definition of wantonness, like negligence, does not include malice or willful intent and, accordingly, that the claim is preempted by § 1681h(e). Defendant relies on the following language from *Armstrong Business Services,*

13

*Inc. v. AmSouth Bank*, 817 So.2d 665 (Ala. 2001), defining wanton conduct as the

> doing of some act . . . with reckless indifference to the consequences of said act, or . . . a failure or omission to do something, with reckless indifference to the consequences of such failure or omission, that is, that the party acting or failing to act is conscious of his conduct, and **even though without any actual intent to injure** is aware from his knowledge of existing circumstances and conditions that his conduct would probably result in injury to another or in damage to his property.[22]

*Id.* at 679-80. Thus, according to defendant, wanton conduct can only occur "without any actual intent to injure." *Id.*

While the Alabama Supreme Court has been careful to explicate that proof of wantonness *does not require* proof that a defendant entertained a specific design or intent to injure a plaintiff, the question becomes whether a plaintiff can nonetheless maintain a claim for wantonness *and* allege a specific intent to injure the plaintiff. Stated another way, does the plaintiff's allegation of intentional conduct preclude a claim for wantonness? The answer to that question lies in part with the definition of another tort recognized in Alabama, *willfulness*, and its comparison to the definition of wantonness.

> "Wantonness" is the conscious doing of some act or the omission of some duty under knowledge of existing conditions and conscious that from the doing of such act or omission of such duty injury will likely or probably result.
>
> "Willfulness" is the conscious doing of some act or omission of some duty under knowledge of existing conditions accompanied with a design or purpose to inflict injury.
>
> Therefore, in "wanton conduct" and "wanton injury" a purpose or intent or

---

[22] Defendant's Reply in Support of Motion to Dismiss Counts II Through V of the Complaint at 6 (doc. no. 9) (**emphasis supplied by defendant in Reply Brief**).

design to injure is not an ingredient; and where a person from his knowledge of existing conditions and circumstances is conscious that his conduct will probably result in injury, yet, with reckless indifference or disregard of the natural or probable consequences, but without having an intent or design to injure, he does the act, or fails to act, he would be guilty of wantonness, but not of willfulness.

But, in "willful conduct" and "willful injury" a purpose or intent or design to injure is an ingredient; and where a person, with knowledge of the danger or peril to another consciously pursues a course of conduct with a design, intent, and purpose of inflicting injury, then he is guilty of willfulness.

*Alabama Pattern Jury Instructions Civil* 29.01 (2d ed. 1993). *See generally* Michael L. Roberts and Gregory S. Cusimano, *Alabama Tort Law* § 3.3 (3d ed. 2000).

Plaintiff accordingly finds herself in the following circumstances: (1) she alleges both negligent and intentional acts to support a wantonness claim; but (2) only state tort claims supported by allegations of malice or intent to injure will survive preemption under § 1681h(e); and (3) wantonness, *unlike willfulness*, does not require proof of an intent to cause injury. Because § 1681h(e) requires malice or willful intent to injure on the part of a defendant in order for a state tort claim to survive preemption, the facts alleged by plaintiff will not support a claim for wantonness, although they may support a claim for willfulness (which currently is not alleged). The claim for wantonness (Count III), therefore, is due to be dismissed.

Finally, defendant argues that the complaint does not allege that "Washington Mutual and/or its employees acted with malice or willful intent to injure the [p]laintiff"; and, as such, plaintiff's remaining claims — defamation and invasion of privacy — cannot be

15

maintained.[23] Plaintiff responds to this argument by asserting that defendant: (1) "willfully"[24] failed to follow reasonable procedures to assure accuracy when preparing plaintiff's consumer report; (2) "willfully"[25] failed to disclose accurate information about plaintiff when requested to do so; (3) "willfully"[26] failed to delete incomplete and inaccurate information in plaintiff's file after conducting a reinvestigation; (4) "willfully"[27] failed to contact the sources suggested by plaintiff during the reinvestigation; (5) "willfully"[28] failed to provide subsequent users of the report with the plaintiff's statement of dispute or summary thereof. Plaintiff alleges that defendant willfully furnished inaccurate information and willfully failed to investigate to correct the error.[29] Plaintiff further alleges that defendant knew or should have known from the correspondence received by it that plaintiff maintained her own home owner's insurance policy, and that defendant acted wantonly when it reported plaintiff's mortgage payments as being late based on her refusal to pay such insurance premiums.[30] Finally, plaintiff alleges that defendant "knew or should have known that the information concerning Plaintiff's credit that was published to various credit reporting agencies was false and inaccurate."[31] These are sufficient allegations of defendant's "willful intent to injure"

---

[23] Memorandum of Law in Support of Motion to Dismiss Counts II through V of the Complaint at 7 (doc. no. 5).
[24] Complaint at 5, ¶ 23.1.
[25] *Id.* at ¶ 23.2.
[26] *Id.* at ¶ 23.3.
[27] *Id.* at ¶ 23.4.
[28] *Id.* at ¶ 23.5.
[29] *See id.* at ¶ 23.
[30] *See id.* at ¶¶ 31, 32.
[31] *See id.* at ¶ 37.

16

plaintiff; therefore, plaintiff's claims for defamation and invasion of privacy are not preempted.

## II. CONCLUSION

In light of the foregoing, defendant's motion to dismiss is granted in part and denied in part. The claims contained in count II (negligence) and count III (wantonness) are dismissed. An order consistent with this memorandum opinion is being entered contemporaneously herewith.

DONE this 30th day of January, 2004.

_____
United States District Judge